1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

11

WESLEY WATSON,

12
                   Petitioner,

13
      v.

14
JEFFREY BEARD, Warden, et al.,

15
                 Respondents.

Civil No.   13-cv-0277-WQH (DHB)

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: PETITION FOR WRIT OF HABEAS CORPUS**

16       On February 4, 2013, Petitioner Wesley Watson ("Petitioner" or "Watson"), a state

17 prisoner proceeding *pro se* and *in forma pauperis*, filed a Petition for Writ of Habeas

18 Corpus ("Petition") pursuant to 28 U.S.C. § 2254.  (ECF No. 1.)  Petitioner seeks relief

19 from his July 28, 2010 conviction in San Diego County Superior Court, Case No.

20 SCN275145, following a jury trial in which Petitioner was found guilty of robbery,

21 burglary, assault, and battery.  (*Id.* at 1-2.)[1]  Petitioner raises two grounds for relief in his

22 Petition.  First, the "[p]rosecutor committed misconduct by (1) eliciting testimony that

23 petitioner sold marijuana; (2) acting as a witness on behalf of the prosecution throughout

24 the trial; and (3) vouching for the case at closing argument."  (*Id.* at 6.)  Second,

25 "Petitioner's jury was instructed with CALCRIM No. 335, an instruction which

26 impermissibly infringes on the reasonable-doubt standard."  (*Id.* at 7.)

27

28
      [1]  Page numbers for docketed materials cited in this Report and Recommendation refer to those imprinted by the Court's electronic case filing ("ECF") system.

Respondent filed an Answer on May 2, 2013, arguing (1) Petitioner's prosecutorial misconduct claims are procedurally defaulted; and (2) all of Petitioner's claims fail on the merits. (ECF No. 6.)  Respondent also lodged the pertinent state court record. (ECF No. 7.)

Petitioner did not file a traverse by his June 10, 2013 deadline.  In light of Petitioner's status as a *pro se* prisoner, the Court *sua sponte* extended the traverse deadline to August 9, 2013. (ECF No. 8.)  Petitioner again failed to file a traverse by the August 9, 2013 deadline, and the Court again *sua sponte* extended the traverse deadline to October 4, 2013.  (ECF No. 9.)  At the time, the Court warned Petitioner that if he "does not file a traverse on or before October 4, 2013, the Court must presume he has no opposition to the Court deciding his Petition on the papers currently before it.  At that time [*i.e.,* October 4, 2013], the Court will consider the matter fully briefed and submitted on the papers and will thereafter issue a written Report and Recommendation."  (*Id.* at 2:3-6.)  Notwithstanding the Court's warning, to date, Petitioner has not filed a traverse.

After a thorough review of the parties' pleadings, the record, and controlling law, and for the reasons discussed below, the Court **RECOMMENDS** that the Petition be **DENIED**.

## I. BACKGROUND

### A.   Factual Background

The following facts are taken from the February 17, 2012 unpublished opinion of the California Court of Appeal in *People v. Watson*, Case No. D058047. (Lodgment No. 6.)  The Court presumes these factual determinations are correct pursuant to 28 U.S.C. § 2254(e)(1).   *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary.")  As the Court of Appeal stated:

A. Prosecution Case

Ruben Carvajal, the victim, had been involved in buying marijuana from, and selling marijuana to, Noah Bloom.  In mid- and late-October 2009, Bloom obtained some marijuana from Jeffrey Vuytowecz and

"fronted" it to Carvajal, meaning Carvajal did not immediately pay Bloom for the delivery. In turn, Bloom had not paid Vuytowecz for the marijuana. Carvajal owed Bloom $5000 to $6000.

Carvajal and Bloom arranged for Carvajal to bring marijuana from Los Angeles to San Diego on November 27, 2009, the day after Thanksgiving. The trial testimonies of Carvajal, Bloom, and Vuytowecz concerning the plan for this trip were hazy.[2] However, it was undisputed that Carvajal did bring marijuana with him when he drove to San Diego to meet with Bloom.

> [2] Carvajal testified he was bringing the marijuana to sell to Bloom, who might resell it to another buyer. Bloom testified Carvajal had concocted a plan to satisfy the debt he owed to Bloom by agreeing to sell him a quantity of high grade marijuana at a substantially reduced price. Vuytowecz said Bloom simply told Vuytowecz there was an opportunity to buy high grade marijuana for a good price.

On November 27, 2009, Bloom's friend use [sic] a false ID to rent a room at a Carlsbad motel, and Bloom gave his friend cash[3] to rent the room. Bloom expected to use the room for only half an hour (to conduct the drug transaction), and planned to leave the room to his friend to use for the remainder of the night. In the past, Bloom and Carvajal had conducted business at Bloom's house, but they used the motel room for this transaction because Bloom's roommate did not like Carvajal.

> [3] Bloom testified Vuytowecz gave him cash to rent the room, but Vuytowecz denied he paid for the room.

Carvajal rendezvoused with Bloom at a 7-11 Store sometime after dark on the evening of November 27th.[4] After purchasing some beer, they went to the motel room. Carvajal brought one pound of the marijuana (along with the beer and his laptop and camera) into the motel room.

> [4] Bloom said he checked in after the sun had already set, and guessed it was around 7:00 p.m.

About 20 minutes after Carvajal and Bloom arrived at the motel, Vuytowecz and Watson arrived and knocked on the door. Bloom answered and invited them inside. Carvajal sat on the bed while Bloom negotiated with Vuytowecz about the marijuana. Watson asked Carvajal if there was more marijuana available, and Carvajal replied there was more in Los Angeles. Watson then attacked Carvajal, punching and choking him as he took Carvajal to the ground. Watson asked Vuytowecz for help, and Vuytowecz joined the assault by kicking Carvajal. Bloom did not come to the aid of Carvajal. Carvajal lost consciousness and, when he awoke, all of his belongings were gone, including the marijuana. He asked the front desk to call the police.

Both Bloom and Vuytowecz, who testified at trial, pleaded guilty to assault charges in connection with their roles in the assault on Carvajal. Bloom testified he had not planned to rob Carvajal and did not know that Vuytowecz and Watson planned to do so. However, Bloom testified that he suspected something was amiss immediately after Vuytowecz and Watson entered the room because the marijuana was not high quality and

Vuytowecz seemed noncommittal about buying it.  While he and Watson were beating Carvajal, Vuytowecz told Bloom to leave and get into Vuytowecz's car.  Vuytowecz and Watson later emerged from the room carrying Carvajal's belongings; Bloom denied he took any of them.  Bloom testified that, after leaving the motel, the assailants stopped for gas and disposed of some of Carvajal's belongings, then went to Bloom's house. Vuytowecz and Watson left some clothing with Carvajal's blood on it at Bloom's house, and Bloom disposed of it the following day.

Vuytowecz's version of the events differed in some respects from that of Bloom.  He claimed Bloom did not owe him any money, but that Carvajal owed Bloom some money.  Vuytowecz testified that, after he (accompanied by Watson) arrived at the motel and evaluated the marijuana, he realized it was not a high grade product and therefore tried to negotiate with Carvajal for a lower price.  However, Bloom tried to justify the higher price and Carvajal was becoming upset.  When the conversation turned "unfriendly," Watson struck Carvajal with Vuytowecz joining in the attack.  Vuytowecz testified it was Bloom who took all of Carvajal's possessions.

Carvajal, as well as Vuytowecz and Bloom, identified Watson as the person who initiated the assault on Carvajal.   The prosecutor agreed Vuytowecz could ameliorate his sentence if he cooperated by testifying at Watson's trial.

B.  The Defense

Watson presented alibi evidence from Mr. and Mrs. Miller, with whom he was living with at the time of the assault.[5]  They testified Watson had Thanksgiving dinner with them the night before the attack, and produced a photograph of the event in which Watson appeared.  Watson did not have a shaved head in that photograph.[6]  Mrs. Miller testified she realized they had not celebrated Waton's birthday, so she bought a cake and the Millers and Watson had dinner and cake the next night (the night of the attack), and Watson was sitting on the back porch when she went to bed around 8:00 or 8:30 p.m.  Mr. Miller testified Watson was at the house, in Mr. Miller's son's room, when Mr. Miller went to bed around 9:30 that night.

[5]     Watson also pointed out there was no fingerprint or DNA evidence collected from the motel room.

[6]     Carvajal's original description of the assailants to the investigating officer was that the attackers had shaved heads but, when later interviewed by the officer, Carvajal said one of the attackers had a shaved head and the other had acne.

(Lodgment No. 6 at 2-5.)

**B.    Procedural Background**

**1.    Conviction**

On July 28, 2010, a jury convicted Petitioner of robbery, burglary, assault by means likely to produce great bodily injury, and battery with serious bodily injury, in

violation of California Penal Code §§ 211, 243(d), 245(a)(1), and 459.  (Lodgment No. 1 at 89-94.)  Petitioner was sentenced to nine years in prison.  (*Id.* at 117; Lodgment No. 2 at 803.)

### 2.    Direct Appeal

Petitioner filed his opening brief on direct appeal on February 23, 2011. (Lodgment No. 3.)   Petitioner raised five arguments: (1) the prosecutor committed prejudicial misconduct by eliciting testimony indicating that Petitioner sold marijuana; (2) the prosecutor committed prejudicial misconduct by acting as a witness on behalf of the prosecution throughout the trial; (3) the prosecutor committed misconduct at closing argument by vouching for the case, telling the jury that it should not think there was anything wrong with the case, and referring to facts outside of evidence regarding the absence of DNA and fingerprint evidence at the scene; (4) CALCRIM No. 335 misstates the law and reduces the prosecution's burden of proof, meriting reversal; and (5) since Petitioner had the owner's permission to enter the motel room, and the owner shared Petitioner's intent to rob Carvajal, Petitioner cannot be convicted of burglary.  (*Id.* at ii-iii, 52-98.)

On February 17, 2012, in an unpublished opinion, the California Court of Appeal affirmed Petitioner's judgment in all respects. (Lodgment No. 6 at 21.)  As to Petitioner's three claims of prosecutorial misconduct, the Court of Appeal found that Petitioner had forfeited these claims by failing to object or ask for a curative admonition.  (*Id.* at 9, 11, 13-14.)  The Court of Appeal also rejected the three prosecutorial misconduct claims on the merits upon finding that there was no misconduct by the prosecutor.  (*Id.* at 9-16.) The Court of Appeal also rejected Petitioner's claims of instructional error and insufficiency of evidence on the burglary charge.  (*Id.* at 16-21.)

On March 23, 2012, Petitioner filed a petition for review in the California Supreme Court.  (Lodgment No. 7.)  Petitioner again raised the three prosecutorial misconduct claims and the instructional error claim.  (*Id.* at I-ii, 3.)  On May 11, 2012, the California Supreme Court summarily denied the petition for review.  (Lodgment No. 8.)

13cv0277

### 3.    Collateral Review

On December 7, 2012, Petitioner filed a petition for writ of habeas corpus in the San Diego County Superior Court.  (Lodgment No. 9.)  In the petition, Petitioner again raised his three prosecutorial misconduct claims, the improper jury instruction claim as to CALCRIM No. 335, an insufficiency of evidence claim on the burglary charge, and a claim of ineffective assistance of trial counsel.  (*Id.*)  On December 28, 2012, the Superior Court denied the petition.  (Lodgment No. 10.)

## II.  LEGAL STANDARDS FOR FEDERAL HABEAS RELIEF

A federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), controls review of this habeas action.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by a state court unless that adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).

"Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).  "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  *Id.* at 71-72 (2003) (citing *Williams*, 529 U.S. at 412; *Bell v. Cone*, 535 U.S. 685, 698 (2002)).  Absent a Supreme Court decision that "squarely addresses the issue" presented to the state court, *Wright v.*

*Van Patten*, 552 U.S. 120, 125 (2008) (per curiam), or establishes an applicable general principle that "clearly extend[s]" to the case, *id.* at 123, a federal habeas court cannot conclude that a state court's adjudication of that issue was contrary to, or an unreasonable application of, clearly established Supreme Court precedent. *Moses v. Payne*, 555 F.3d 742, 760 (9th Cir. 2009) (citing *Van Patten*, 552 U.S. at 126). The state court decision need not cite or even be aware of the controlling Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).

The "'contrary to' and 'unreasonable application' clauses have independent meaning." *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 404-05). A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Id.* at 694 (citing *Williams*, 529 U.S. at 405-06). A federal habeas court "may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Id.* (citing *Williams*, 529 U.S. at 407-08). Additionally, the "unreasonable application" clause requires that the state court decision "be not only erroneous, but objectively unreasonable." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (per curiam) (citing *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003); *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam); *Williams*, 529 U.S. at 409); *see also Lockyer*, 538 U.S. at 75 ("The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. . . . The state court's application of clearly established law must be objectively unreasonable." (citing *Williams*, 529 U.S. at 409-20, 412)); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004) ("Extraordinarily deferential to the state courts, the 'unreasonable application' clause does not trigger habeas relief unless the state court's analysis was 'objectively unreasonable.'" (quoting *Clark v. Murphy*, 331 F.3d 1062, 1067-68 (9th Cir. 2003)). "This requires a showing of

1    error greater than clear error." *Medina*, 386 F.3d at 877 (citing *Clark*, 331 F.3d at 1068).

2           "Ninth Circuit precedent may be persuasive authority for purposes of determining

3    whether a particular state court decision is an unreasonable application of Supreme Court

4    law, and may also help determine what law is clearly established." *Fernandez v. Adams*,

5    2011 U.S. Dist. LEXIS 38662, at *23 (C.D. Cal. Mar. 1, 2011) (citing *Sims v. Rowland*,

6    414 F.3d 1148, 1151 (9th Cir. 2005)).  However, "circuit law may not be used to fill open

7    questions in the Supreme Court's holdings for purposes of federal habeas analysis." *Id.*

8    at *24 (citing *Moses*, 555 F.3d at 760).

9           Federal habeas courts must defer to factual determinations made by the state

10   courts, to which a statutory presumption of correctness attaches, and the petitioner "shall

11   have the burden of rebutting the presumption of correctness by clear and convincing

12   evidence." 28 U.S.C. § 2254(e)(1); *see also Schriro v. Landrigan*, 550 U.S. 465, 473-74

13   (2007) ("AEDPA . . . requires federal habeas courts to presume the correctness of state

14   courts' factual findings unless applicants rebut this presumption with 'clear and

15   convincing evidence.'" (quoting 28 U.S.C. § 2254(e)(1))).

16          To determine whether habeas relief is available under § 2254(d), the Court "looks

17   through" any unexplained decisions to "the last reasoned state court decision"[2] as the

18   basis for its analysis. *Davis v. Grigas*, 443 F.3d 1155, 1158 (9th Cir. 2006) (quoting *Van*

19   *Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003); *Shackleford v. Hubbard*, 234 F.3d

20   1072, 1079 n.2 (9th Cir. 2000) (quoting *Ylst v. Nunnumaker*, 501 U.S. 797, 803-04

21   (1991)).  "Where there has been one reasoned state judgment rejecting a federal claim,

22   [federal habeas courts apply the presumption that] later unexplained orders upholding that

23   judgment or rejecting the same claim rest upon the same ground." *Ylst*, 501 U.S. at 803-

24   04.  However, if the dispositive state court order does not "furnish a basis for its

25   reasoning," federal habeas courts must conduct an independent review of the record to

26   determine whether the state court's decision is contrary to, or an unreasonable application

27   _____

28          [2]   Here, "the last reasoned state-court decision" was the California Court of
     Appeal's March 24, 2011 decision denying Petitioner's direct appeal.  (Lodgment No.
     12.)

of, clearly established Supreme Court law. *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003); *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000), *overruled in part by Lockyer*, 538 U.S. at 75-76.

Moreover, federal habeas courts reviewing state prisoner claims under § 2254 "must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in" *Brecht v. Abrahamson*, 507 U.S. 619 (1993). *Fry v. Pliler*, 551 U.S. 112, 121 (2007); *see also Baines v. Cambra*, 204 F.3d 964, 977 (9th Cir. 2000) (Ninth Circuit applies the *Brecht* harmless error standard "uniformly in all federal habeas corpus cases under § 2254"). Thus, even if constitutional error occurred, a federal habeas petitioner must still demonstrate prejudice, that is, that the "error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht*, 507 U.S. at 623 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

## III. DISCUSSION

In Ground One of the Petition, Petitioner asserts a claim of prosecutorial misconduct based on several theories. In Ground Two, Petitioner claims the jury received an instruction that impermissibly infringes on the reasonable doubt standard. For the reasons set forth below, Petitioner is not entitled to habeas relief on either claim.

### A.   Ground One: Prosecutorial Misconduct

Petitioner first contends the prosecutor committed misconduct by (1) improperly eliciting testimony that Petitioner sold marijuana; (2) acting as a prosecution witness throughout the trial by interjecting her own unsworn testimony into the trial, posing leading questions, and referring to her conversations with witnesses; and (3) vouching for the case during her closing argument by stating there was nothing wrong with the case and by referring to DNA and fingerprint evidence outside the record. (ECF No. 1 at 6, 13, 27.)

Respondent contends Petitioner's prosecutorial misconduct claims are procedurally defaulted based on the California Court of Appeal's determination that "the claims of

prosecutor misconduct [were] forfeited because trial defense counsel had failed to interpose a contemporaneous objection." (ECF No. 6-1 at 18:18-21.) "Respondent affirmatively pleads that this state law procedural default is independent and adequate to preclude federal review." (*Id.* at 24-25 (citing *Walker v. Martin*, ___ U.S. ___, 131 S. Ct. 1120 (2011)).) Respondent alternatively contends Petitioner's prosecutorial misconduct claims fail on the merits because the state court's determination that the prosecutor did not commit misconduct was correct and it did not "so infect[] the trial with unfairness as to make the resulting convictions a denial of due process." (*Id.* at 19:4-22 (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).)

The Court first addresses Respondent's contention that the claims in Ground One are procedurally defaulted. The Court then addresses the merits of each specific claim of prosecutorial misconduct.

### 1.   Procedural Default

#### a.   Applicable Law

"In a federal habeas action brought by a state prisoner, federal courts 'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *La Crosse v. Kernan*, 244 F.3d 702, 704 (9th Cir. 2001) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)); *see also Ylst*, 501 U.S. at 801 (citing *Murray v. Carrier*, 477 U.S. 478, 485-92 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977)) ("When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court."). "For the procedural default rule to apply, however, the application of the state procedural rule must provide 'an adequate and independent state law basis' on which the state court can deny relief." *Park v. California*, 202 F.3d 1146, 1151 (9th Cir. 2000) (quoting *Coleman*, 501 U.S. at 729-30) (citing *Fields v. Calderon*, 125 F.3d 757, 760 (9th Cir. 1997)).

If a petitioner procedurally defaults his federal claims in state court by operation of a state rule that is independent of federal law and adequate to support the judgment, federal habeas review of the claims is barred unless

the prisoner can demonstrate either cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claims will result in a fundamental miscarriage of justice.

*Carter v. Giurbino*, 385 F.3d 1194, 1196-97 (9th Cir. 2004) (citing *Coleman*, 501 U.S. at 750); *see also Calderon v. U.S. District Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) [hereinafter *Bean*] ("The procedural default doctrine 'bars federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement.'") (quoting *Coleman*, 501 U.S. at 729-30).

"The Ninth Circuit has held that because procedural default is an affirmative defense, Respondent must first have 'adequately pled the existence of an independent and adequate state procedural ground.'" *Roberts v. Uribe*, 2013 U.S. Dist. LEXIS 34992, at *8 (S.D. Cal. Feb. 6, 2013) (quoting *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003)).

Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, however, the ultimate burden is the state's.

Accordingly, because it is the State who seeks dismissal based on the procedural bar, it is the State who must bear the burden of demonstrating that the bar is applicable -- in this case that the state procedural rule has been regularly and consistently applied in habeas actions.

*Bennett*, 322 F.3d at 586. "If the state meets this burden, federal review of the claim is foreclosed unless the petitioner can 'demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Roberts*, 2013 U.S. Dist. LEXIS 34992, at *9 (quoting *Coleman*, 501 U.S. at 750).

"A state ground is independent and adequate only if the last state court to which the petitioner presented the claim 'actually relied' on a state rule that was sufficient to justify the decision." *Carter*, 385 F.3d at 1197 (quoting *Valerio v. Dir. of Dep't of Prisons*, 306 F.3d 742, 773 (9th Cir. 2002) (en banc); *Koerner v. Grigas*, 328 F.3d 1039,

1   1049-50 (9th Cir. 2003)).

2       b.   Analysis

3       Here, the California Court of Appeal summarized California law with respect to

4   preserving issues for appeal.  (Lodgment No. 6 at 7.)  The Court of Appeal then held that

5   each of Petitioner's prosecutorial misconduct claims were forfeited due to trial counsel's

6   failure to object during trial.  (*Id.* at 9 ("Watson neither objected nor asked for a curative

7   admonition, and therefore he has forfeited the claim of error."), 11 (same), 13-14 (same).)

8   In the Answer, Respondent affirmatively pled that Petitioner's prosecutorial misconduct

9   claims are procedurally defaulted.  (ECF No. 6 at 2:9; ECF No. 6-1 at 18:18-19:2.)  As

10  a result, the burden shifts to Petitioner to place the defense in issue by alleging specific

11  facts "that demonstrate the inadequacy of the state procedure, including citation to

12  authority demonstrating inconsistent application of the rule."  *Bennett*, 322 F.3d at 586.

13  However, Petitioner has not filed a traverse or otherwise attempted to satisfy his burden.

14      Moreover, it is well-established that California's contemporaneous objection rule

15  is an independent and adequate state procedural bar.  *See Shendi v. Cate*, 2014 U.S. Dist.

16  LEXIS 588, at *17 (E.D. Cal. Jan. 3, 2014) ("It has been the law of the Ninth Circuit for

17  over thirty years that California's contemporaneous objection rule is both independent

18  and, at least where a party has failed to make any objection at all, adequate to support

19  default." (citing *Melendez v. Pliler*, 288 F.3d 1120, 1125 (9th Cir. 2002) (recognizing that

20  California's contemporaneous objection rule "is consistently applied when a party has

21  failed to make *any* objection to the admission of evidence."); *Garrison v. McCarthy*, 653

22  F.2d 374, 377 (9th Cir. 1981) ("California courts adhere to the contemporaneous

23  objection rule barring appellate review of alleged errors that are not raised at trial by

24  timely objection.")); *Robles v. Long*, 2013 U.S. Dist. LEXIS 129200, at *14 (S.D. Cal.

25  June 17, 2013) ("California's contemporaneous objection rule is consistently applied,

26  independent of federal law, and adequate.") (citing *Fairbank v. Ayers*, 650 F.3d 1243,

27  1256 (9th Cir. 2013) (concluding federal habeas petitioner's prosecutorial misconduct

28  claim was procedurally barred after the California Supreme Court had applied the state's

contemporaneous objection rule on direct review)).

Finally, the Court notes Petitioner has made no attempt to demonstrate cause for the procedural default and prejudice, or that a fundamental miscarriage of justice would accompany this Court's decision not to consider the procedurally defaulted claims.  As a result, Petitioner's prosecutorial misconduct claims in Ground One are procedurally defaulted.  Therefore, the Court **RECOMMENDS** that Ground One be **DENIED** as procedurally defaulted, foreclosing federal habeas review on that theory.

Nevertheless, "in the habeas context, a procedural default . . . is not a jurisdictional matter."  *Trest v. Cain*, 522 U.S. 87, 89 (1997).  If the District Judge elects to reach the merits of Petitioner's defaulted prosecutorial misconduct claims despite his procedural default of those claims, the Court **RECOMMENDS**, alternatively, that the claims be **DENIED** on the merits, for the reasons set forth below.

### 2.    Merits[3]

Even assuming *arguendo* Petitioner's claims in Ground One are not procedurally defaulted, the claims fail on their merits because Petitioner cannot demonstrate that the California Court of Appeal's decision on the merits of the claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).

/ / /

---

[3]    Because the California Court of Appeal denied Petitioner's prosecutorial misconduct claims both on procedural grounds and on the merits, its opinion is entitled to AEDPA deference.  *See Rolan v. Coleman*, 680 F.3d 311, 321 (3d Cir. 2012) ("[I]n referencing 'adjudication on the merits,' AEDPA draws no . . . distinction for alternative rulings. Rather, it suggests that where a state court has considered the merits of the claim, and its consideration provides an alternative and sufficient basis for the decision, such consideration warrants deference."); *Stephens v. Branker*, 570 F.3d 198, 208 (4th Cir. 2009) ("[A]n alternative merits determination to a procedural bar ruling is entitled to AEDPA deference.").

a.      Applicable Law

"A habeas petitioner can prevail on a claim for relief due to prosecutorial misconduct only upon a showing first, the prosecutor's alleged conduct was improper, and second, the misconduct so infected the trial with unfairness as to render the resulting conviction a denial of due process." *McClintock v. Yates*, 2008 U.S. LEXIS 33667, at *33-34 (S.D. Cal. Apr. 22, 2008) (citing *Darden*, 477 U.S. at 181; *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

The occurrence of prosecutorial misconduct "does not automatically invalidate a conviction." *Furman v. Wood*, 190 F.3d 1002, 1006 (9th Cir. 1999). Indeed, "it is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden*, 477 U.S. at 181 (citation omitted). Rather, "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Donnelly*, 416 U.S. at 643). "Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" *Id.* (quoting *Donnelly*, 416 U.S. at 642). In other words, "[a] defendant's due process rights are violated if prosecutorial misconduct renders a trial 'fundamentally unfair.'" *Drayden v. White*, 232 F.3d 704, 713 (9th Cir. 2000) (quoting *Darden*, 477 U.S. at 183). Additionally, "[p]rosecutorial misconduct which rises to the level of a due process violation may provide the grounds for granting a habeas petition only if that misconduct is deemed prejudicial under [*Brecht*'s] 'harmless error' test." *Shaw v. Terhune*, 380 F.3d 473, 478 (9th Cir. 2003) (citing *Fields v. Woodford*, 309 F.3d 1095, 1109 (9th Cir. 2002); *Bains v. Cambra*, 204 F.3d 964, 976-78 (9th Cir. 2000)). "*Brecht* requires that [courts] independently evaluate whether an error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* (quoting *Brecht*, 507 U.S. at 637).

"[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982); *see also Estelle v. Williams*, 425 U.S. 501, 503 (1976)

("The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment.") (citing *Drope v. Missouri*, 420 U.S. 162, 172 (1975)).  "Determining whether a due process violation occurred requires an examination of the entire proceedings so the prosecutor's conduct may be placed in its proper context."  *Ward v. Beard*, 2013 U.S. Dist. LEXIS 156589, at *17 (C.D. Cal. Sept. 13, 2013) (citing *Boyd v. California*, 494 U.S. 370, 384-85 (1990)).

b.   Analysis

In Ground One of the Petition, Petitioner raises three separate claims of prosecutor misconduct that, according to Petitioner, "each so infected the trial with unfairness as to make the resulting convictions a denial of due process, but collectively they worked synergistically to mar petitioner's rights to a fair trial." (ECF No. 1 at 48:14-16.)

> First, the prosecutor elicited character evidence and criminal propensity evidence, to wit, that petitioner previously sold marijuana, that she knew (as evidenced by her *in limine* motion to conditionally admit the evidence) was inadmissible under [California] Evidence Code section 1101, subdivision (a).  Second, the prosecutor improperly interjected her own unsworn testimony into the case and into the jury's minds by posing leading questions and referring to her own conversations with witnesses.  Third, the prosecutor unconstitutionally vouched for the case in closing argument by stating there was nothing wrong with this case and asserting there was no DNA or fingerprints at the scene.

(*Id.* at 48:17-26.)

With respect to all three claims of prosecutor misconduct, Respondent contends:

> the state court reasonable [sic] determined that the behavior of the prosecutor about which Watson complained was neither 'undesirable' nor 'universally condemned.'  On the contrary, the prosecutor's actions were proper.  The question about Watson's sale of marijuana was proper to establish his relationship with another witness.  The prosecutor neither vouched nor became the equivalent of a witness in questioning witnesses about her interviews with them, because those questions were proper and necessary to correct or remind witnesses about their earlier statements.  And the prosecutor's statements in closing argument were not vouching; instead, they were permissible statements about the evidence.

> Since the prosecutor did nothing wrong, Watson's trial was not so infected with unfairness.  Accordingly, the state court reasonably rejected Watson's claims.

(ECF No. 6-1 at 19:12-22.)

13cv0277

Here, none of Petitioner's claims of prosecutorial misconduct, whether viewed together or separately, warrant habeas relief.

### i.   *Improper Character Evidence*

Petitioner argues in his first claim of prosecutorial misconduct that the prosecutor committed misconduct by posing a series of questions to Vuytowecz which improperly elicited testimony indicating Petitioner had previously sold marijuana, and that this "other acts" evidence was inadmissible under California Evidence Code § 1101(a).[4]  (ECF No. 1 at 50:14-16.)

During the prosecutor's direct examination of Vuytowecz, the following exchange occurred:

| | |
|---|---|
| [Prosecutor]: | So your relationship with Mr. Watson is a social relationship? |
| [Vuytowecz]: | Yeah. |
| [Prosecutor]: | Yes? |
| [Vuytowecz]: | Yes. |
| [Prosecutor]: | Do you also have a business relationship with Mr. Watson? |
| [Vuytowecz]: | We've had one in the past, yes. |
| [Prosecutor]: | What kind? |
| [Vuytowecz]: | Just recreational drug habits. |
| [Prosecutor]: | Did you ever sell dope together? |
| [Vuytowecz]: | Yes. |
| [Prosecutor]: | When you did, who sold to whom? |
| [Vuytowecz]: | It kind of went both ways.  There was no -- you know, |

---

[4]  California Evidence Code § 1101(a) generally provides that "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion."  Section 1101(b) provides certain exceptions to this general rule, including that character evidence is admissible "when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . .) other than his or her disposition to commit such an act."  Cal. Evid. Code § 1101(b).

not one over the other.

(Lodgment No. 2 at 383:2-16.)

On direct appeal, the California Court of Appeal rejected Petitioner's claim on the merits, as well as Petitioner's claim that the issue should be deemed preserved despite trial counsel's failure to object or ask for a curative admonition:

> Watson argues the issue should be deemed preserved because an objection would have been futile (because an admonition would not have cured the harm caused by the misconduct) or, alternatively, that he is entitled to relief because the failure to object constituted ineffective assistance of counsel. We are not persuaded by Watson's arguments because both are premised on the assumption the evidence was inadmissible under Evidence Code section 1101, subdivision (a). However, "Evidence Code section 1101, subdivision (b), permits the admission of other-crimes evidence against a defendant 'when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . .) other than his or her disposition to commit such an act.' Section 1101 prohibits the admission of other-crimes evidence for the purpose of showing the defendant's bad character or criminal propensity. It also recognizes, however, that there are facts other than criminal propensity to which other-crimes evidence may be relevant. [Citation.] The categories listed in section 1101, subdivision (b), are example of facts that legitimately may be proved by other-crimes evidence, but . . . the list is not exclusive. [Citations.] As we have explained, the admissibility of other-crimes evidence depends upon the materiality of the fact sought to be proved or disproved, the tendency of the uncharged crime to prove or disprove the material fact, and the existence of any policy requiring exclusion of the evidence. [Citation.] In order to be material, the fact in dispute 'may be either an ultimate fact in the proceeding or an intermediate fact "from which such ultimate fact[ ] may be . . . inferred." ' [(Quoting *People v. Thompson* (1980) 27 Cal.3d 303, 315, fn. omitted.)]" (*People v. Catlin* (2001) 26 Cal.4th 81, 145-146.)
>
> Here, the testimony was relevant to show the nature of the relationship between Watson and Vuytowecz, and to corroborate Vuytowecz's testimony that Watson accompanied Vuytowecz on a mission to acquire marijuana. (See *People v. Ellers* (1980) 108 Cal.App.3d 943, 953-954.) There was no misconduct in eliciting that evidence.

(Lodgment No. 6 at 9-10.)

Petitioner claims the Court of Appeal's conclusion that the evidence was admissible to (1) show the nature of the relationship between him and Vuytowecz, and (2) corroborate Vuytowecz's testimony, is "irrelevant and unreasonable, and as a result the judgment of the Court of Appeal is contrary to established Supreme Court precedent and constitutes an unreasonable determination of the facts based on the record." (ECF

No. 1 at 52:8-11.)

First, Petitioner contends California Evidence Code § 1101(b) "says nothing about permitting otherwise inadmissible evidence for the purpose of exposing 'the nature of the relationship' between a defendant and someone else." (*Id.* at 52:13-16.) Further, Petitioner contends "there was no question about the relationship between Vuytowecz and petitioner because their relationship was well established. [Citation.] It is highly unlikely the prosecutor would have actually elicited this cumulative evidence for the purpose of establishing an irrelevant, already-established issue." (*Id.* at 52:20-23.)

Second, Petitioner contends the state court's conclusion that the other-acts evidence was admissible to corroborate Vuytowecz's testimony that he and Petitioner were on a mission to acquire marijuana "is tenuous at best. There is no indication in the record that the prosecutor elicited the inadmissible evidence for this purpose. Further, such corroboration would have been of infinitesimal importance in this case, because whether or not petitioner was on a mission to acquire marijuana has no bearing on any of the elements of the charged offenses." (*Id.* at 52:26-53:3.)

Importantly, "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Rose v. Hodges*, 423 U.S. 19, 21-22 (1975) (per curiam)). Thus, even assuming California Evidence Code § 1101(b) does not permit evidence of prior criminal acts to establish the nature of the relationship between a defendant and another individual or to corroborate a witness's testimony, the trial court's alleged violation of this *state* evidentiary rule does not justify *federal* habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.") (citing 28 U.S.C. § 2241; *Rose*, 423 U.S. at 21); *Larson v. Palmateer*, 515 F.3d 1057, 1065 (9th Cir. 2008) ("The correctness of the trial court's evidentiary ruling as a matter of state law is irrelevant to our review, because a federal court may

entertain an application for a writ of habeas corpus 'only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." (quoting 28 U.S.C. § 2254(a)); *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991) ("[F]ailure to comply with the state's rules of evidence is neither a necessary nor a sufficient basis for granting habeas relief.").

"The admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process." *Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995) (citing *Estelle*, 502 U.S. 62). However, "[u]nder AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by 'clearly established Federal law,' as laid out by the Supreme Court." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (quoting 28 U.S.C. § 2254(d)). Here, Petitioner cites to no established Supreme Court precedent that is contradicted by the Court of Appeal's decision. Moreover, the Ninth Circuit has recognized that "[t]he Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process," and "it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ. Absent such 'clearly established Federal law,' [federal courts] cannot conclude that the state court's ruling was an 'unreasonable application.'" *Id.* at 1101 (citing *Carey v. Musladin*, 549 U.S. 70, 77 (2006)).

Finally, to the extent Petitioner's claim is reviewable based on a potential denial of due process, the claim lacks merit. "A habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision." *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir. 2005). "The admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process." *Johnson*, 63 F.3d at 930 (citing *Estelle*, 502 U.S. 62). "Evidence introduced by the prosecution will often raise more than one inference, some permissible, some not; we must rely on the jury to sort them out in light of the court's instructions. Only if there

are *no* permissible inferences the jury may draw from the evidence can its admission violate due process." *Jammal*, 926 F.2d at 920; *see also Windham v. Merkle*, 163 F.3d 1092, 1103-04 (9th Cir. 1998) ("[W]hether or not the admission of evidence is contrary to a state rule of evidence, a trial court's ruling does not violate due process unless the evidence is 'of such quality as necessarily prevents a fair trial.'") (quoting *Kealohapauole v. Shimoda*, 800 F.2d 1463, 1465 (9th Cir. 1986)), *overruled on other grounds by Solis v. Garcia*, 219 F.3d 922, 929 n.7 (9th Cir. 2000) (per curiam).

Here, Petitioner cannot shown that admission of this evidence rendered his trial "fundamentally unfair" and that the jury could draw no permissible inferences from the evidence. "Both California and Federal rules of evidence allow evidence of prior criminal activity to prove, *inter alia*, intent, common scheme or plan, knowledge, and absence of mistake or accident." *Frausto v. Grounds*, 2013 U.S. Dist. LEXIS 51855, at *24-25 (C.D. Cal. Jan. 11, 2013) (citing FED. R. EVID. 404(b); CAL. EVID. CODE § 1101(b)). The California Court of Appeal determined that evidence of Petitioner's prior marijuana sales "was relevant to show the nature of the relationship between Watson and Vuytowecz, and to corroborate Vuytowecz's testimony that Watson accompanied Vuytowecz on a mission to acquire marijuana." (Lodgment No. 6 at 10.) This Court agrees with the Court of Appeal that there were permissible inferences the jury could draw from the evidence of Petitioner's prior marijuana sales. Thus, the prosecutor's conduct in eliciting this evidence does not amount to misconduct, let alone misconduct that "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181.

Accordingly, the California Court of Appeal's rejection of Petitioner's claim that the trial court improperly admitted evidence of Petitioner's prior drug activity cannot be contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1); *see also Van Patten*, 552 U.S. at 126 ("Because our cases give no clear answer to the question presented, let alone one in Van Patten's favor, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law. Under the

1   explicit terms of § 2254(d)(1), therefore, relief is unauthorized.") (citations and internal

2   quotation marks omitted; brackets in original); *Stenson v. Lambert*, 504 F.3d 873, 881

3   (9th Cir. 2007) ("Where the Supreme Court has not addressed an issue in its holding, a

4   state court adjudication of the issue not addressed by the Supreme Court cannot be

5   contrary to, or an unreasonable application of, clearly established federal law.") (citing

6   *Kane v. Espitia*, 546 U.S. 9, 9 (2006) (per curiam)).

7                    *ii.      Prosecutor Acting as a Witness*

8          In Petitioner's second claim of prosecutorial misconduct, Petitioner contends "[t]he

9   prosecutor improperly interjected her own unsworn testimony into the case and into the

10  jury's minds and improperly acted as a witness by posing leading questions and referring

11  to her own conversations with witnesses," and that "[t]he prosecutor acted essentially as

12  an investigator in the case, frequently using her own recollection of interviews that she

13  had with the witnesses to impeach them." (ECF No. 1 at 53:11-16.) Petitioner contends

14  "[s]uch impeachment turns the prosecutor into a witness, because the only way that the

15  relevant witness could be entirely impeached would be to put a witness on the stand to

16  contradict them, and, in this case, that witness would be the prosecutor." (*Id.* at 53:17-

17  21.) In light of numerous instances where the prosecutor asked witnesses to recall their

18  interviews with her[5], Petitioner claims:

19          The prosecutor's conduct amounted to testifying on behalf of the
        prosecution, because the prosecutor's constant questioning regarding what
20      the witnesses told the prosecutor herself, and not, for example, an officer,
        pitted her credibility against the witnesses' credibility. The misconduct was
21      further exacerbated by the prosecutor's comprehensive involvement in the
        investigation, and not only the prosecution, of petitioner's case, and her
22      communication of this to the jury.

23  (*Id.* at 57:16-21.)

24          Based on these allegations, Petitioner claims "the prosecutor's interjection of her

25  unsworn testimony violated petitioner's Sixth and Fourteenth Amendment rights to

26  _____

27          [5] The Court of Appeal summarized this alleged misconduct as follows: "During
    the examination of Carvajal, Bloom and Vuytowecz, the prosecutor asked some questions
28  that were prefaced by phrases like '[d]o you recall in the interview with me and my
    investigator you said,' '[d]o you remember talking to me in my office and saying,' or
    '[d]o you recall telling me." (Lodgment No. 6 at 10.)

confrontation and due process." (*Id.* at 56:11-12.)

In response, Respondent contends the prosecutor did not become "the equivalent of a witness in questioning witnesses about her interviews with them, because those questions were proper and necessary to correct or remind witnesses about their earlier statements." (ECF No. 6-1 at 19:16-19.)

On direct appeal, the California Court of Appeal rejected Petitioner's claim on the merits, as well as Petitioner's claim that the issue should be deemed preserved despite trial counsel's failure to object or ask for a curative admonition:

> Watson resurrects his twin claims that the issue should be deemed preserved because an objection would have been futile (because an admonition would not have cured the harm caused by the misconduct) or, alternatively, that he is entitled to relief because the failure to object constituted ineffective assistance of counsel. We are not persuaded by Watson's arguments because both arguments are premised on the assumption that posing leading questions to a witness is misconduct, insofar as the leading questions imply some knowledge by the prosecutor of facts outside of the record, and the questions amount to an interjection of those facts in an unsworn fashion. However, in *People v. Collins* (2010) 49 Cal.4th 175, the defendant argued the trial court committed reversible error in allowing the prosecutor to ask leading questions of a witness and argued that "by using leading questions, the prosecutor essentially testified for Zamora, who was not credible." (*Id.* at p. 214.) The court, after noting that "leading questions are not always impermissible on direct examination" and that a trial court has discretion to permit such questions (*Ibid.*), concluded that questions substantially indistinguishable from the questions asked in this case were not improper. For example, in *Collins*, the prosecutor (referring the witness to a meeting between himself, the prosecutor and a detective several days before his trial testimony) asked, " 'Do you remember saying you had forgotten to tell us something because you were scared and now you want to tell us something else,' " " 'Do you remember telling us,' " " 'Did you tell us,' " and " 'Do you remember telling us.' " (*Id.* at p. 215.) *Collins* concluded such questions were permissible under the circumstances of that case.

(Lodgment No. 6 at 11-12.)

Petitioner contends the Court of Appeal's analysis "is unreasonable and contrary to established Supreme Court precedent." (ECF No. 1 at 58:14-15.) Petitioner first claims the analysis "attempts to reduce the entirety of petitioner's claim to a complaint that the prosecutor improperly posed leading questions." (*Id.* at 58:15-16.) Petitioner asserts, however, that his "claim is not premised solely on the propriety of posing leading questions," but that such questions were prejudicial because they "did not simply guide

witnesses with established truth, but acted to improperly insert the prosecutor's version of the facts into evidence *to prove the truth of the prosecutor's questions, not to elicit the truth from the witness on the stand*." (*Id.* at 58:221-27.)  Petitioner also claims the Court of Appeal's analysis "failed utterly to address the confrontation aspect of petitioner's claims.  The federal constitution entitled petitioner to confront evidence against him; but when this evidence is not presented in proper procedural format, that is, with a witness on the stand under oath to tell the truth, petitioner cannot assert his right to confrontation." (*Id.* at 59:1-5.)[6]  The Court finds that each contention is without merit.

### A.   Due Process

As noted above, prosecutorial misconduct only entitles a federal habeas petitioner to relief if it is shown that the petitioner's due process rights were violated because the prosecutor's misconduct rendered the trial "fundamentally unfair." *Darden*, 477 U.S. at 181.  Moreover, *Darden* requires courts to first address "whether the prosecutor's remarks were improper; if so, the next question is whether such conduct 'infected the trial with unfairness.'" *Salazar v. Lewis*, 2013 U.S. Dist. LEXIS 132196, at *22 (N.D. Cal. Sept. 15, 2013) (quoting *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005)).  "A prosecutorial misconduct claim is decided by 'examining the entire proceedings to determine whether the prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Johnson*, 63 F.3d at 929).

---

[6] Petitioner also characterizes the prosecutor's interjection of unsworn testimony as improper vouching.  (*See* ECF No. 1 at 56-57.)  However, this characterization does not strictly align with the concept of vouching as set forth in the case law.  "Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony." *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993).  Petitioner's claim that the prosecutor used leading questions to insert her own testimony into the record is not, strictly speaking, vouching.  Indeed, Petitioner does not claim that the prosecutor's questions were aimed at supporting the witnesses' veracity.  Rather, Petitioner claims the questions sought to introduce new evidence into the record, even if the evidence contradicted the witnesses' testimony.  Thus, this particular claim of prosecutorial misconduct is not properly viewed as a claim of improper vouching.  That being said, the Court does address Petitioner's claim that the prosecutor improperly vouched during closing arguments.  *See supra* Part III.A.2.b.iii.

"The first factor in determining whether misconduct amounted to a due process violation is whether the trial court issued a curative instruction to the jury." *Id.* (citing *United States v. De Cruz*, 82 F.3d 856, 862 (9th Cir. 1996); *United States v. Simtob*, 901 F.2d 799, 806 (9th Cir. 1990); *United States v. Polizzi*, 801 F.2d 1543, 1558 (9th Cir. 1986)). "When a curative instruction is issued, a court presumes that the jury has disregarded the improper remarks and that no due process violation occurred." *Id.* at *23 (citing *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987)).

Additional factors that bear on whether a prosecutor's misconduct rises to a due process violation include: (1) the weight of evidence of guilt, *United States v. Young*, 470 U.S. 1, 19-20 (1985); (2) whether the misconduct was isolated or part of an ongoing pattern, *Lincoln v. Sunn*, 807 F.2d 805, 809 (9th Cir. 1987) ("courts will not reverse when the prosecutorial comment is a single, isolated incident, does not stress an inference of guilt from silence as a basis of conviction, and is followed by curative instructions.") (citations omitted); and (3) whether the misconduct relates to a critical part of the case, *Giglio v. United States*, 405 U.S. 150, 154 (1972). *See Salazar*, 2013 U.S. Dist. LEXIS 132196, at *23 (reviewing applicable factors).

Here, the Court concludes the prosecutor's various leading questions to Carvajal, Bloom, and Vuytowecz were not improper. As an initial matter, the Court recognizes that "[t]he use of leading questions on direct examination is not always improper." *United States v. Archdale*, 229 F.3d 861, 865 (9th Cir. 2000); *see also Turner v. Marshall*, 63 F.3d 807, 818 (9th Cir. 1995) ("In the discretion of the judge, some leading questions can be proper and would only justify reversal if their use amounted to a denial of a fair trial.") (citing *United States v. Castro-Romero*, 964 F.2d 942, 943 (9th Cir. 1992) (per curiam); *Esco Corp. v. United States*, 340 F.2d 1000, 1005 (9th Cir. 1965)).

Petitioner identifies fourteen specific questions where "the prosecutor employed her recollection of her interviews with" the witnesses. (ECF No. 1 at 54:6-19.) However, the Court has carefully reviewed each of these questions and the trial testimony surrounding these questions, and finds no misconduct. Indeed, aside from establishing

the existence of the witnesses' interviews with the prosecutor and a detective (Lodgment No. 2 at 335, 491), the prosecutor's reference to the interviews were primarily made for purposes of refreshing the witnesses' recollection.  Specifically, the prosecutor sought to refresh (a) Carvajal's recollection about the details of a phone call he had with Bloom prior to the incident at the motel (*id.* at 146); (b) Bloom's recollection about the date the incident occurred (*id.* at 178), the quantity of marijuana brought to the motel by Carvajal (*id.* at 181), and Bloom's agreement to plead guilty (*id.* at 335, 370); and (c) Vuytowecz's recollection about whether Carvajal threw any punches during the incident (*id.* at 430), whether Petitioner held Carvajal in a choke hold (*id.* at 431), and Vuytowecz's agreement to plead guilty (*id.* at 451, 456-457).  Such questions were permissible under both federal and California evidence rules.  *See* FED. R. EVID. 611(c) ("Leading questions should not be used on the direct examination of a witness *except as may be necessary to develop the witness' testimony*.") (emphasis added); *Collins*, 49 Cal. 4th at 214 ("Leading questions are permitted on direct examination to the extent necessary to stimulate or revive [the witness's] recollection.") (citations and internal quotation marks omitted; brackets in original).  Moreover, the remaining questions highlighted by Petitioner simply referenced the prosecutor's interviews with the witnesses for purposes of directing the questions to a new topic, *i.e.*, whether the witnesses were shown a photo lineup (Lodgment No. 2 at 337, 462), or establishing the occurrence of a witness interview or the demeanor of the prosecutor during the interview (*id.* at 371, 491).  None of the questions suggested critical testimony.  Thus, the trial court's allowance of the questions, even if in the face of defense counsel's failure to object, was inconsequential to the verdict.  *See Cooper v. Woodford*, 2010 U.S. Dist. LEXIS 71870, at *57 (N.D. Cal. June 22, 2010) ("Leading questions frequently are simply re-phrased to avoid the leading question problem.  There is no indication here that any of the information elicited was vital and hinged on the prosecutor asking a leading question to obtain the testimony.").

Further, even if the leading questions were improper, they did not infect the trial with such unfairness that the resulting conviction amounts to a denial of due process.

First, the trial judge repeatedly instructed the jury that statements and questions of attorneys are not evidence.[7] "Having been adequately instructed, the jury is presumed to have ignored the prosecutor's improper remarks." *Salazar*, 2013 U.S. Dist. LEXIS 132196, at *24-25 (citing *Greer*, 483 U.S. at 765-66).

Second, the Court has reviewed the trial transcript in its entirety and finds there is sufficient evidence weighing in support of Petitioner's guilt. The Court recognizes that the testimony of each of the three prosecution witnesses (Carvajal, Bloom, and Vuytowecz) was not entirely consistent and, at various times, was not entirely truthful. However, the state court's determination of facts is presumptively correct absent "clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340. The Court concludes Petitioner has not provided a sufficient basis to disturb this presumption. Moreover, the Court of Appeal's factual determinations are supported by the trial testimony. Importantly, whatever inconsistencies might exist, Carvajal, Bloom, and

---

[7] For example, the trial court instructed at the outset of the trial as follows:

> Nothing that the attorneys say is evidence. In their opening statements and their closing arguments the attorneys are obviously going to discuss the case with you. But their remarks are not evidence. Their questions are not evidence. Only the witnesses['] answers are the evidence. The attorneys questions may be significant if they assist you in understanding the witnesses['] answers. And you are not to assume that something is true just because an attorney asks a question that suggests that it's true.

(Lodgment No. 2 (part 3 of 6) at 8.)

In addition, prior to closing arguments, the Court admonished the jury:

> You must decide what the facts are in this case. You must use only the evidence that was presented in the courtroom. Evidence is the sworn testimony of witnesses, any exhibits that were admitted into evidence, and anything else I told you to consider as evidence.

> . . . Nothing that the attorneys say is evidence. In their opening statements and closing arguments, the attorneys will discuss the case with you, but their remarks are not evidence. Their questions are not evidence. Only the witnesses answers are evidence. The attorneys questions may be significant only if they helped you to understand the witnesses answers. Do no assume that something is true just because one of the attorneys asked a question that suggested it was true.

(Lodgment No. 2 at 693.)

1   Vuytowecz each identified Petitioner as the primary assailant.  Thus, the evidence against

2   Petitioner is sufficient.

3       Third, although the prosecutor's use of leading questions was not an isolated

4   incident, as detailed above, the questions were fairly limited in nature.  The record fails

5   to reflect an extensive, ongoing pattern of improper questions.  *See United States v.*

6   *Wright*, 625 F.3d 583, 609-13 (9th Cir. 2010) (prosecutor's "improper statements were

7   relatively isolated incidents over the course of a ten day trial.").

8       Fourth, as discussed above, the prosecutor's leading questions, and the testimony

9   that they elicited, "did not relate to a critical part of the case . . . or form the sole basis of

10  [Petitioner's] guilt."  *Salazar*, 2013 U.S. Dist. LEXIS 132196, at *26.

11      In sum, the Court concludes that, under the circumstances, the prosecutor's leading

12  questions were not improper.  Moreover, even if they were, the trial court appropriately

13  instructed the jury to disregard the questions and comments of counsel when assessing

14  the evidence.  Finally, the other factors discussed above weigh against Petitioner's

15  argument that the prosecutor's leading questions violated his right to due process.

16  Accordingly, the California Court of Appeal's rejection of this argument on direct appeal

17  cannot be contrary to, or an unreasonable application of, clearly established federal law.

18  28 U.S.C. § 2254(d)(1).

19                    B.      Confrontation Clause

20      Petitioner also claims the Court of Appeal's analysis of the prosecutor's leading

21  questions "failed utterly to address the confrontation aspect of petitioner's claims.  The

22  federal constitution entitled petitioner to confront evidence against him; but when this

23  evidence is not presented in proper procedural format, that is, with a witness on the stand

24  under oath to tell the truth, petitioner cannot assert his right to confrontation."  (ECF No.

25  1 at 59:1-5.)  This claim, too, lacks merit.

26      The Confrontation Clause of the Sixth Amendment provides that, in criminal cases,

27  the accused has the right to "be confronted with the witnesses against him."  U.S. CONST.

28  / / /

amend. VI.[8]  The "Confrontation Clause provides a criminal defendant with the right to face those who testify against him and the right to conduct cross-examination." *Fernandez v. Adams*, 2011 U.S. Dist. LEXIS 38662, at \*54 (C.D. Cal. Mar. 1, 2011) (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987)).  "The right to confront a witness serves the purposes of ensuring reliability by means of oath, exposing the witness to cross-examination, and permitting the trier of fact to weigh the demeanor of the witness." *Id.* at \*54-55 (citing *California v. Green*, 399 U.S. 149, 158 (1970)).  "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990); *see also Salazar*, 2013 U.S. Dist. LEXIS 132196, at \*27 ( "The ultimate goal of the Confrontation Clause is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee.") (citing *Crawford v. Washington*, 541 U.S. 36, 61 (2004)).

The Confrontation Clause "applies to 'witnesses' against the accused--in other words, those who 'bear testimony.'" *Crawford*, 541 U.S. at 51 (citation omitted).  Indeed, "only *testimonial* statements are excluded by the Confrontation Clause."  *Giles v. California*, 554 U.S. 353, 376 (2008).  Moreover, "[o]nly testimonial *out-of-court* statements raise Confrontation Clause concerns." *United States v. Sine*, 493 F.3d 1021, 1035 n.11 (9th Cir. 2007) (emphasis added) (citing *Whorton v. Bockting*, 549 U.S. 406, 419-20 (2007)).  Although the Supreme Court has not comprehensively defined "testimonial," "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Crawford*, 541 U.S. at 68.

"Confrontation Clause violations are subject to harmless error analysis." *United States v. Nielsen*, 371 F.3d 574, 581 (9th Cir. 2004); *see also United States v. Allen*, 425 F.3d 1231, 1235 (9th Cir. 2005).  A federal habeas court must determine whether the

---

[8] The Sixth Amendment's Confrontation Clause applies to the states through the Fourteenth Amendment.  *Pointer v. Texas*, 380 U.S. 400, 406 (1965).

allegedly inadmissible evidence "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Hernandez v. Small*, 282 F.3d 1132, 1144 (9th Cir. 2002) (quoting *Brecht*, 507 U.S. at 637).

Here, the Confrontation Clause is not applicable. Whereas the Confrontation Clause applies only to *testimonial out-of-court* statements, here, the prosecutor's questions were *non-testimonial in-court* statements. *See Salazar*, 2013 U.S. Dist. LEXIS 132196, at *29 ("[T]he court instructed the jury that the statements of attorneys are not evidence. . . . Therefore, the prosecution's questions to [the witness] did not violate the Confrontation Clause."). Moreover, even if the Confrontation Clause applied, as discussed above, the questions did not have "substantial and injurious effect or influence in determining the jury's verdict," and, therefore, any violation would be harmless. *Brecht*, 507 U.S. at 637.

### iii.    Improper Closing Argument

In Petitioner's third claim of prosecutorial misconduct, Petitioner contends "[t]he prosecutor improperly vouched for the case in closing argument by stating that there was nothing wrong with this case and asserting there was no DNA or fingerprints at the scene." (ECF No. 1 at 59:7-8.) Specifically, Petitioner takes issue with the following remarks at the end of the prosecutor's closing argument:

> *There is no issue here, ladies and gentlemen. Do not think because we are here in trial there's a problem with the case.* Well, there's liars. That's never an easy thing to present to somebody but doesn't take away what the facts are. Wesley Watson has an absolute right to the jury trial, and he has had it.
>
> And it wouldn't matter if there was DNA or fingerprints. *And there was no DNA or fingerprints of Wesley Watson at that crime scene, but neither were there any of Noah Bloom, Jeffrey Vuytowecz or Ruben Carvajal.* And they all admitted to you they were there, so that doesn't mean that Wesley Watson wasn't there. I'm asking you to convict Mr. Watson of all four counts and all of the attending allegations.

(Lodgment No. 2 at 742:12-25 (emphasis added); ECF No. 1 at 59:11-18.)

"Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not

1   presented to the jury supports the witness's testimony." *Necoechea*, 986 F.2d at 1276.

2   There is "no bright-line rule about when vouching will result in reversal." *Id.* at 1278.

3   Rather, courts should consider a number of factors including:

4       the form of vouching; how much the vouching implies that the prosecutor
        has extra-record knowledge of or the capacity to monitor the witness's
5       truthfulness; any inference that the court is monitoring the witness's
        veracity; the degree of personal opinion asserted; the timing of the
6       vouching; the extent to which the witness's credibility was attacked; the
        specificity and timing of a curative instruction; the importance of the
7       witness's testimony and the vouching to the case overall.

8   *Id.*

9       When analyzing this claim on direct appeal, the California Court of Appeal stated:

10      Watson, citing numerous cases holding a prosecutor commits
        misconduct by "vouching for the case" presented to the jury, argues use of
11      the italicized words was misconduct for three reasons. First, Watson asserts
        that because the prosecutor implied (when she said "there's no problem
12      here") that she was privy to information the jury had not seen and knew
        from that information Watson was guilty. Second, he asserts that the
13      prosecutor (when she said "[d]o not think because we are here in trial there's
        a problem with the case") was adverting to her experience in trying criminal
14      cases in which a defendant is clearly guilty (but nevertheless required trial)
        and that this was such a case. Third, he asserts the prosecutor (when she
15      said "there was no DNA or fingerprints of [Watson] at that crime scene, but
        neither were there any of [Carvajal, Bloom or Vuytowecz]") was referring
16      to evidence not introduced at trial, i.e. that the results of testing were
        negative for all parties allegedly involved in the assault.

17

18      Watson argues these statements constituted misconduct because they
        implied the prosecutor had information the jury did not, and the information
19      convinced her Watson was guilty. However, Watson neither objected nor
        asked for a curative admonition regarding these comments in the
20      prosecutor's closing argument, and therefore he has forfeited any claim of
        error as to the form of the questions.

21          . . .

22      We are unpersuaded there is a *reasonable likelihood* that the jury
        construed or applied any of the complained-of remarks as adverting to
23      unadmitted evidence of which the prosecutor was aware, or that she was
        inviting the jury to defer to her expertise in evaluating criminal matters. For
24      example, the prosecutor's statement that "[t]here is no issue here, ladies and
        gentlemen[,] [do] not think because we are here in trial there's a problem
25      with the case. . . [Watson] has an absolute right to a jury trial, and he has
        had it," could reasonably be understood to be a comment on the evidence
26      that, while Bloom and Vuytowecz had pleaded guilty, Watson differed only
        because he elected to require the prosecution to prove its case against him.
27      Reading the comment in the least damaging fashion, this statement was *an
        argument on the evidence*, i.e. that the jury should not infer this difference
28      alone meant there were issues or problems with the case against Watson.

Similarly, the prosecutor's statement that "there was no DNA or fingerprints of [Watson] at the crime scene, but neither were there any of [Carvajal, Bloom or Vuytowecz] [a]nd they all admitted to you they were there, so that doesn't mean [Watson] wasn't there," read in the least damaging fashion, could also reasonably be understood to be a comment on the evidence instead of a suggestion that there was unadmitted evidence of which the prosecutor was aware.   When the defense cross-examined Detective Williams, it elicited testimony that neither Watson's fingerprints nor his DNA was found in the hotel room.  On redirect, the prosecutor asked Detective Williams to confirm police also had not found fingerprints or DNA in the hotel room from Carvajal, Bloom or Vuytowecz because the room was not processed to collect fingerprints or DNA.   Thus, the comments were based on the evidence and argued no adverse inference should be drawn from the absence of physical evidence linking Watson to the crime scene because the same absence of physical evidence pertained to people who admitted they *were* at the crime scene.   Thus, reading the comment in the least damaging fashion, this statement was an argument on the evidence rather than an implication of the prosecutor's knowledge of unadmitted evidence.

(Lodgment No. 6 at 13-16.)

Petitioner argues the Court of Appeal's analysis was flawed for several reasons. First, the Court of Appeal's conclusion as to the first set of comments "is an unreasonable determination of the facts and runs contrary to federal law because the prosecutor's comment renders costly petitioner's assertion of his constitutional right to a trial by jury. That is, even accepting that the Court's interpretation of the prosecutor's statement is the one the jury applied, there is no legitimate value in arguing Watson is guilty because he asserted his right to a jury trial, which is exactly what the prosecutor's statement reduces to."  (ECF No. 1 at 61:3-10.)  However, Petitioner fails to cite to any Supreme Court precedent establishing that the prosecutor's argument in this regard was improper. Moreover, the Court of Appeal's analysis was not an unreasonable determination of the facts in light of the evidence presented.  Indeed, the Court of Appeal reasonably found a "legitimate value" in the prosecutor's remarks regarding the evidence that Bloom and Vuytowecz had pleaded guilty, namely, that the jury should not infer that Petitioner's decision to proceed to trial "meant there were issues or problems with the case against" Petitioner.  (Lodgment No. 6 at 15.)  The Court of Appeal's decision in this regard was not unreasonable.

/ / /

Second, Petitioner claims "the State Court took no cognizance of petitioner's argument that the prosecutor improperly asserted her prosecutorial experience when she argued that there was no issue with this case. The State Court failed to analyze the issue, and petitioner still maintains that there can be no reasonable understanding of the prosecutor's statement that does not redound ultimately to her professional experience." (ECF No. 1 at 61:11-15.) Contrary to Petitioner's claim, however, the Court of Appeal did analyze this issue. Indeed, the Court of Appeal expressly stated that it was "unpersuaded there is a *reasonable likelihood* that the jury construed or applied any of the complained-of remarks as adverting to unadmitted evidence of which the prosecutor was aware, or that she was inviting the jury to defer to her expertise in evaluating criminal matters." (Lodgment No. 6 at 15.) Thus, Petitioner's claim that the state court ignored his argument is unsupported by the record. Moreover, the Court of Appeal's decision was reasonable, and Petitioner has failed to identify any Supreme Court precedent of which the state court's decision contradicted or unreasonably applied.

Third, Petitioner claims the Court of Appeal's analysis of the comments regarding DNA and fingerprint evidence "conflated the police department's never having conducted testing with the prosecutor's affirmative assertion that neither Carvajal, nor Bloom, nor Vuytowecz left DNA or fingerprints at the scene. In truth, *no one knows whether these men left DNA or fingerprints at the scene because no DNA or fingerprint testing was conducted*." (ECF No. 1 at 61:23-27.) Petitioner further contends "the ineluctable conclusion that the jury must draw is that the prosecutor was aware that there was no DNA or fingerprints at the scene of the crime, but this simply was not established based on the evidence presented at trial." (*Id.* at 61:27-62:3.) This Court agrees with Petitioner that the absence of DNA and fingerprint evidence due to the police department's decision not to process the crime scene for such evidence does not mean that no DNA or fingerprint evidence was present. Thus, the prosecutor's statement that "there was no DNA or fingerprints of Wesley Watson at that crime scene, but neither were there any of Noah Bloom, Jeffrey Vuytowecz or Ruben Carvajal" went beyond the evidence presented

at trial.  Thus, it was improper for the prosecutor to argue, as the Court of Appeal summarized, that "no adverse inference should be drawn from the absence of physical evidence linking Watson to the crime scene because the same absence of physical evidence pertained to people who admitted they *were* at the crime scene."  (Lodgment No. 6 at 15-16.)

However, "[i]mproper argument does not, per se, violate a defendant's constitutional rights."  *Jeffries v. Blodgett*, 5 F.3d 1180, 1191 (9th Cir. 1993) (citing *Darden*, 477 U.S. at 181; *Campbell v. Kincheloe*, 829 F.2d 1453, 1457 (9th Cir. 1987)).  "Even if a prosecutor's argument is egregiously improper, a federal court cannot issue a writ of habeas corpus to state authorities unless 'the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Thompson v. Borg*, 74 F.3d 1571, 1576 (9th Cir. 1996) (quoting *Darden*, 477 U.S. at 181).  Determining whether a due process violation occurred requires an examination of the entire proceedings so the prosecutor's argument may be placed in proper context.  *Boyde*, 494 U.S. at 384-85; *Greer*, 483 U.S. at 765-66.  "In determining whether a comment rendered a trial constitutionally unfair, factors [a federal habeas court] may consider are whether the comment misstated the evidence, whether the judge admonished the jury to disregard the comment, whether the comment was invited by defense counsel in its summation, [and] whether defense counsel had an adequate opportunity to rebut the comment, the prominence of the comment in the context of the entire trial and the weight of the evidence."  *Hein v. Sullivan*, 601 F.3d 897, 912-13 (2010) (citing *Darden*, 477 U.S. at 182).

Here, the Court concludes that the prosecutor's improper remark regarding the absence of DNA and fingerprint evidence, although it improperly misstated the evidence, it did not so infect the trial with unfairness such that Petitioner's due process rights were violated.  Importantly, as discussed above, the Court admonished the jury that the attorney's comments and arguments were not evidence.  *See infra* note 7.  This factor is important given that the testimony provided by the investigating detective made it clear

-33-

that the reason no DNA or fingerprint evidence was found was because the crime scene had not been tested for it.  Thus, the jury is presumed to have disregarded the improper comment by the prosecutor during her closing argument.  *Salazar*, 2013 U.S. Dist. LEXIS 132196, at *24-25.  Next, immediately following the prosecutor's remark, defense counsel began his own closing argument during which he had an opportunity to rebut the prosecutor's comment, although defense counsel failed to do so.  (Lodgment No. 2 at 743-770.)  Next, although the prosecutor's comment occurred at the very close of her closing argument, the comment about DNA and fingerprint evidence was isolated and did not constitute a recurring or prominent theme in the prosecution's case.  Finally, as discussed above, in light of the numerous inconsistencies and fabrications found in the testimony of Carvajal, Bloom, and Vuytowecz, the weight of the evidence against Petitioner is not overwhelming.  Nevertheless, sufficient evidence existed for the jury to conclude that Petitioner committed the charged offenses.

> iv.     *Cumulative Effect of Alleged Prosecutorial Misconduct*

As discussed above, the Court concludes that each claim of prosecutorial misconduct is insufficient to support habeas relief.  However, habeas relief can be available where several instances of prosecutorial misconduct, each insufficient by itself to support relief, can, when viewed together, amount to a due process violation.  Indeed, "although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors may still prejudice a defendant." *Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002) (quoting *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996)); *see also Karis v. Calderon*, 283 F.3d 1117, 1132 (9th Cir. 2002) ("Although no single alleged error may warrant habeas corpus relief, the cumulative effect of errors may deprive a petitioner of the due process right to a fair trial."  However, where "there is no single constitutional error in [a] case, there is nothing to accumulate to a level of a constitutional violation." *Mancuso*, 292 F.3d at 957 (citing *Fuller v. Roe*, 182 F.3d 699, 704 (9th Cir. 1999).  Such is the case here, and Petitioner's argument that the cumulative effect of the prosecutor's alleged misconduct

amounts to a constitutional violation fails.

*v.    Conclusion*

Based on the foregoing analysis, even assuming Petitioner's Ground One prosecutorial misconduct claims are not procedurally defaulted, it cannot be said that the California Court of Appeal's denial of these claims "was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States," or that it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

Accordingly, the Court **RECOMMENDS** that Ground One of the Petition be **DENIED**.

**B.    Ground Two: Jury Instruction**

In Ground Two of the Petition, Petitioner contends that a jury instruction, CALCRIM No. 335, unconstitutionally reduces the prosecution's burden of proving each offense beyond a reasonable doubt. The trial court instructed the jury with CALCRIM No. 335, which states:

> If the crimes charged in Counts 1 through 4 were committed, then Noah Bloom and Jeffrey Vuytowecz were accomplices to those crimes.
>
> You may not convict the defendant of the crimes charged in Counts 1 through 4 based on the testimony of an accomplice alone. You may use the testimony of an accomplice to convict the defendant only if:
>
> 1. The accomplice's testimony is supported by other evidence that you believe;
>
> 2. That supporting evidence is independent of the accomplice's testimony;
>
> AND
>
> 3. That supporting evidence tends to connect the defendant to the commission of the crimes.
>
> Supporting evidence, however, may be slight. It does not need to be enough, by itself, to prove that the defendant is guilty of the charged crime, and it does not need to support every fact about which the witness testified.[] On the other hand, it is not enough if the supporting evidence merely shows that a crime was committed or the circumstances of its

commission.  The supporting evidence must tend to connect the defendant to the commission of the crime.

The evidence needed to support the testimony of one accomplice cannot be provided by the testimony of another accomplice.

Any testimony of an accomplice that tends to incriminate the defendant should be viewed with caution.  You may not, however, arbitrarily disregard it.  You should give that testimony the weight you think it deserves after examining it with care and caution and in the light of all the other evidence.

(Lodgment No. 1 at 55.)

Petitioner claims "[t]his instruction is incorrect because it is meant to convey to the jury that it must view accomplice testimony with caution, but has the opposite effect of reducing the burden of proof by creating a permissive presumption that communicates that the jury can convict so long as there is accomplice testimony and at least some 'slight' corroborating evidence."  (ECF No. 1 at 69:26-70:2.)  Petitioner further argues the instruction essentially "undercuts the constitutionally required reasonable doubt standard by implying that the jury can substitute this equation for reasonable doubt.  The instruction given here, that only slight corroborating evidence was necessary to establish guilt, violated petitioner's right to due process of law because it diluted the prosecution's burden of proof."  (*Id.* at 70:3-7.)

In addressing Petitioner's claim of instructional error on direct appeal, the California Court of Appeal stated:

Watson claims CALCRIM No. 335, as given by the court, unconstitutionally lessened the prosecution's burden of proof by requiring far less proof than proof beyond a reasonable doubt.  However, under the federal Constitution, there is no requirement of *any* corroboration before an accomplice's testimony may provide proof beyond a reasonable doubt (see, e.g., *U.S. v. Necochea* (9th Cir. 1993) 986 F.2d 1273, 1282), much less that such corroboration must achieve a level of persuasiveness satisfying the proof beyond a reasonable doubt standard.  Instead, the requirement under section 1111 that "[a] conviction can not be had upon the testimony of an accomplice unless it be corroborated" is a matter of state law that does not implicate a federal constitutional right.  (See, e.g., *In re R.C.* (1974) 39 Cal.App.3d 887, 892-893; *Barco v. Tilton* (C.D. Cal. 2010) 694 F.Supp.2d 1122, 1136.)

Although federal due process mandates that the elements of the offenses be shown beyond a reasonable doubt (see, e.g., *Sullivan v. Louisiana* (1993) 508 U.S. 275, 277-278), the corroboration statutorily imposed by section 1111 does not require that proof.  Instead, the court in

*People v. Frye, supra*, 18 Cal.4th at page 966, after holding that "[d]efendant's characterization of the accomplice corroboration requirement as an element of the crime subject to proof beyond a reasonable doubt [citations] is unsupported and unpersuasive," concluded the state law principles governing accomplice evidence (including permitting the corroborating evidence to be satisfied by "slight" evidence) did not offend due process protections provided by the federal Constitution.

(Lodgment No. 6 at 17-18.)

Petitioner's argument that CALCRIM No. 335, as instructed in this case, violates his due process rights by reducing the state's burden of proof was recently rejected by a sister district court in California. In *Chatman v. Martel*, 2013 U.S. Dist. LEXIS 4750, at *16-17 (E.D. Cal. Jan. 10, 2013), the court rejected a state prisoner's federal habeas claim that was premised on the same argument presented here by Petitioner:

> The Supreme Court has held, "The Fourteenth Amendment does not forbid a state court to construe and apply its laws with respect to the evidence of an accomplice." *Lisenba v. California*, 314 U.S. 219, 227, 62 S. Ct. 280, 86 L. Ed. 166 (1941). Due process does not prohibit the use of uncorroborated accomplice testimony. *See United States v. Augenblick*, 393 U.S. 348, 352, 89 S. Ct. 528, 21 L. Ed. 2d 537 (1969) (explaining "the use of accomplice testimony is not catalogued with constitutional restrictions" of procedural due process); *Darden v. United States*, 405 F.2d 1054, 1056 (9th Cir.1969) ("it is well established that a conviction in federal court may be based on the uncorroborated testimony of an accomplice"); *Harrington v. Nix*, 983 F.2d 872, 874 (8th Cir. 1993) ("state laws requiring corroboration do not implicate constitutional concerns that can be addressed on habeas review"); *Odle v. Calderon*, 884 F.Supp. 1404, 1418 (N.D. Cal. 1995) ("corroboration of accomplice testimony is not a federal constitutional requirement"). *Given that uncorroborated testimony from an accomplice is permissible under the Constitution, testimony corroborated by "slight" evidence is also permissible, and does not violate Petitioner's right to due process.* Consequently, Petitioner fails to demonstrate the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law." *See* 28 U.S.C. § 2254(d).

(Emphasis added).

Importantly, "[s]tate laws requiring corroboration do not implicate constitutional concerns that can be addressed on habeas review." *Harrington v. Nix*, 983 F.2d 872, 874 (8th Cir. 1993); *see also Krulewitch v. United States*, 336 U.S. 440, 454 (1949) ("[I]n federal practice there is no rule preventing conviction on uncorroborated testimony of accomplices, as there are in many jurisdictions, and the most comfort a defendant can expect is that the court can be induced to follow the 'better practice' and caution the jury

against 'too much reliance upon the testimony of accomplices.'") (quoting *Caminetti v. United States*, 242 U.S. 470, 495 (1917)); *Laboa v. Calderon*, 224 F.3d 972, 979 (9th Cir. 2000).

This Court agrees with the reasoning of the court in *Chatman*. Because the Constitution does not require *any* corroboration of an accomplice's testimony, California's requirement that an accomplice's testimony need only be "slight" does not offend due process. As Respondent correctly argues, Petitioner is essentially seeking "to raise the state-law requirement for corroboration of accomplice testimony to that of an element of the crime, requiring proof beyond a reasonable doubt. But federal due process was not offended by the state's corroboration requirement." (ECF No. 6-1 at 21:18-21.)[9] Thus, the state court's rejection of Petitioner's claim of instructional error on direct appeal was not contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d). Nor was the decision "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Accordingly, the Court **RECOMMENDS** that Ground Two of the Petition be **DENIED**.

## IV. CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge William Q. Hayes under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the

---

[9] Petitioner's reliance on various cases from the Fifth and Seventh Circuits are unavailing. (*See* ECF No. 1 at 75:22-76:20.) Indeed, those cases addressed whether a "slight evidence" jury instruction is proper in conspiracy cases. "The essential elements of conspiracy, which have been stated repeatedly in the decisions of [the Ninth Circuit], are 'an agreement to accomplish an illegal objective coupled with one or more overt acts in furtherance of the illegal purpose and the requisite intent necessary to commit the underlying substantive offense.'" *United States v. Melchor-Lopez*, 627 F.2d 886, 890 (9th Cir. 1980) (quoting *United States v. Oropeza*, 564 F.2d 316, 321 (9th Cir. 1977); *United States v. Monroe*, 552 F.2d 860, 862 (9th Cir. 1977); *United States v. Friedman*, 593 F.2d 109, 115 (9th Cir. 1979); *United States v. Bailey*, 607 F.2d 237, 242 (9th Cir. 1979). While more than "slight evidence" is required to establish the agreement element of a conspiracy charge, as discussed herein, federal law does not require *any* evidence corroborating an accomplice's testimony. Thus, Petitioner's reliance on conspiracy cases is misplaced.

13cv0277

United States District Court for the Southern District of California. For all the foregoing reasons, **IT IS RECOMMENDED** that Petitioner's habeas Petition be **<u>DENIED</u>** in its entirety as he is not in custody in violation of any federal right. **IT IS FURTHER RECOMMENDED** the Court issue an Order (1) approving and adopting this Report and Recommendation and (2) directing that judgment be entered denying the Petition.

**IT IS HEREBY ORDERED** no later than **May 1, 2014**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** any Reply to the Objections shall be filed with the Court and served on all parties no later than **May 15, 2014**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: April 1, 2014

DAVID H. BARTICK
United States Magistrate Judge

13cv0277